THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARION SEXTON, Respondent, *v*. THE WARDEN OF THE FEMALE WORKHOUSE, WELFARE ISLAND, NEW YORK CITY, Defendant, Impleaded with the PEOPLE OF THE STATE OF NEW YORK, Appellant.

First Department, March 19, 1926.

Crimes — sentence — relator was convicted before magistrate in city of New York of vagrancy based on offer to commit prostitution — Inferior Criminal Courts Act, § 98-a, applies to convictions under §§ 88 and 89 — magistrate holding succeeding term had power to sentence relator — relator should not have been discharged on return of writ of habeas corpus.

The relator, who was convicted before a magistrate in the city of New York of the crime of vagrancy based on an offer to commit prostitution, should not

have been discharged on the return of a writ of habeas corpus on the ground that she was improperly sentenced by a magistrate holding a succeeding term, for section 98-a of the Inferior Criminal Courts Act, authorizing the magistrate sitting in the same court at a succeeding term to impose sentence in cases where the sentence is deferred, as in this case, for the purpose of allowing investigation, applies to convictions under sections 88 and 89 of the Inferior Criminal Courts Act.

McAVOY and DOWLING, JJ., dissent, with opinion.

APPEAL by the People of the State of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of December, 1925, sustaining a writ of habeas corpus and discharging the relator from custody.

*Joab H. Banton,* District Attorney [*Michael J. Driscoll,* Deputy Assistant District Attorney, of counsel], for the appellant.

*Max Altmayer* [*Nathan Ballin* with him on the brief], for the respondent.

MARTIN, J. At Special Term a writ of · habeas corpus was sustained and the relator discharged on the ground that the committing magistrate was without power to act for the reason that relator had been found guilty by another magistrate.

The relator was convicted of the crime of vagrancy, having offered to commit an act of prostitution in certain premises in the borough of Manhattan. Thereupon, in accordance with section 98-a of the Inferior Criminal Courts Act of the City of New York (Laws of 1910, chap. 659, added by Laws of 1913, chap. 372, as amd. by Laws of 1915, chap. 531) and pending sentence, relator was remanded until a probation officer should investigate and report as to her case. At the time relator was found guilty and as authorized by said section 98-a, the papers were indorsed to indicate that sentence might be imposed by any magistrate presiding in the same court.

It is the contention of respondent that section 98-a does not apply in her case. This is based on the assumption that sections 88 and 89 of the same act relating to commitments for vagrancy in connection with prostitution, as well as to commitments for several other offenses named therein, are special enactments to which section 98-a, referred to by counsel for respondent as a general statute, does not relate. In both said sections 88 and 89 (as amd. by Laws of 1913, chap. 372, and subsequent amdts.) it is provided that " * * * the magistrate, before whom such conviction is had, shall, subject to the provisions of section ninety-two of this act, impose upon the person so convicted one or other of the penalties herein provided ∗ * *." Section 92 (as amd. by Laws of 1915,

People ex rel. Sexton *v.* Warden, Etc.    **225**

App. Div. 223]        First Department, March, 1926.

chap. 531) relates to the discharge of persons committed and is not now in point. Reference is also made for respondent to subdivision 4 of section 887 of the Code of Criminal Procedure. It is argued that it was correctly held at Special Term that " the commitment here is utterly illegal and void."

It will be readily conceded that the Inferior Criminal Courts Act is to be considered and interpreted as providing a complete system for the disposition of cases arising in the courts to which it applies. We are not to read into its provisions qualifications which will make this system less workable. To guide a committing magistrate there is provided a method of investigation by probation officers. Section 98-a indicates the care which has been taken that this means of obtaining an intelligent view of the entire situation affecting each case may be available, despite the fact that assignments of magistrates to the various court districts of the City Magistrates' Court in New York city are for very short periods. The canons of construction emphasized for respondent should not be misapplied. The objective of the particular amendment should first be resolved in guiding one seeking to construe a provision of a comprehensive scheme of legislation such as the Inferior Criminal Courts Act. (*Matter of Watkins,* 118 Misc. 645, 648; *Holmes* v. *Carley,* 31 N. Y. 289; *Hudson Iron Co.* v. *Alger,* 54 id. 173.)

The Inferior Criminal Courts Act was enacted in 1910. It covers many subjects, but all within a comprehensive system. Frequent amendments are to be expected in perfecting such a scheme, but the system is intended to be workable, and this purpose should be the cardinal guide in construing and interpreting the original provisions as well as amendments, which are apt to be hastily interjected into various parts of the act without fully indicating their interdependent relationship to the various other parts of the same act. We are not surprised, therefore, to find that subsequent to 1910 various amendments were necessary, and that in 1915 an amendment to section 98-a was adopted making provision for commitments by magistrates other than the trial magistrate. This was evidently intended to remedy conditions which had arisen and such as are adverted to above. Amendments of such a character are to be regarded as intending to make the act more flexible and better suited to meeting conditions confronted in and about the Magistrates' Courts.

In this instance, by section 98-a, the objective sought was to enable the committing magistrate to have information deemed essential to a proper disposition of the case, without bringing about an unworkable system of transferring cases and prisoners from

court to court, and without bringing about the very conditions which other provisions of the Inferior Criminal Courts Act sought to avoid. In many cases it is important for the committing magistrate to know whether the prisoner is a hardened or vicious criminal or an unfortunate who is a first offender, in order that opportunities for reformation may be afforded in proper cases. During the last few days of an assignment a magistrate would be reluctant to postpone sentencing a prisoner if the result were to be that the case would have to follow him to another court. This would cause unnecessary confusion and, by needlessly occupying the time of the attaches of the court, retard the administration of the law. Especially is this true where women are involved. Presumably the reasons which dictate having separate courts for them would be equally good for not taking them from court to court after conviction. It should not be assumed that it is improper or unfair to leave the commitment to a magistrate other than the one who presided at the trial. On the contrary, it is to be assumed that the magistrate who presided at the trial deemed the case to be of such importance that it could be best disposed of on the report of a probation officer, rather than on the basis of what appeared at the time of the trial.

Section 92-a of the Inferior Criminal Courts Act (as added by Laws of 1913, chap. 372) applies to another situation in which judgment may be pronounced by a magistrate other than the one who presided at the trial, that section providing that within the period of one year any magistrate sitting in the same district may revoke a suspended sentence, cause the arrest of the offender and sentence him. This section also shows the purpose of such acts and the thoughtful deliberation evinced by its adoption in an effort to accomplish justice. There is no inexorable principle requiring that a sentence should be imposed by the same judge or judges who conducted the trial. In *People* v. *Brown* (153 App. Div. 234) it was held that it was not necessary that the Court of Special Sessions imposing a sentence be composed of the same justices who heard the evidence and committed the prisoner. At page 235, JENKS, P. J., said: " I am of opinion that it was not legally essential that the court which pronounced judgment should be composed of the same justices, or indeed of any of the justices, who composed the trial court. The principle which controls is expressed in *People* v. *Bork* (96 N. Y. 198)."

In *People* v. *Bork* (*supra*) the court said: " We know of no constitutional principle which requires that judgment, on a conviction for crime, must be pronounced by the same judges before whom the trial was had. It has never been supposed that the

death of a judge, after the conviction of a defendant, would prevent sentence, but this would follow if the contention should be admitted that the same judge who tried the case must pronounce the judgment." (See, also, *Ex parte Williams*, 26 Fla. 310.)

That it is not considered necessary for a sentence to be imposed by the trial court is also shown by the provision of the Code of Criminal Procedure which permits an appellate court to change the sentence if the record warrants such a change. (Code Crim. Proc. § 543.)

Mr. Justice LYDON discussed this subject in *People ex rel. Barnes* v. *Warden of Workhouse* (127 Misc. 224). He said in part: " If the construction contended for by the relator prevails, here are some of the results that would follow: *First,* there would be a considerable jail delivery, since something like one-third of the women convicted in the Women's Court alone have been sentenced by some magistrate other than the convicting one. Add to this all similar cases under section 88 and the results would be appalling. *Second,* whenever a magistrate's assignment in a given court ended, in place of leaving his cases then undisposed of for attention in the tribunal where they belonged, the following procedure would have to be adopted: If a woman, convicted under section 89, the defendant would have to be taken from the special court created exclusively by the Legislature for her kind of case, and brought into a district, or say the Traffic Court, where the magistrate who convicted her might then be sitting; or he would have to leave his court, go to the Women's Separate Court, and interrupt the session of the magistrate there sitting in order properly to sentence the woman. Further, if he should go on vacation he would have to return within three days to sentence her  *  .*  *. If he were absent because of illness or some emergency, or otherwise became disabled, or resigned or his term expired, then the woman would never be sentenced."

In any event, if the sentence were incorrect, the prisoner should have been remanded for proper sentence.

We are of the opinion that this order should be reversed, the writ dismissed and the prisoner remanded.

CLARKE, P. J., and FINCH, J., concur; DOWLING and MCAVOY, JJ., dissent.

MCAVOY, J. (dissenting). However much the necessity of the provision here in question for a proper disposition of the causes in City Magistrates' Courts, I feel bound to dissent from my colleagues' conclusion that we can so construe the conflicting statutes as to uphold the conviction here.

The People of the State appeal in this proceeding from an order sustaining a writ of habeas corpus, upon which writ the prisoner was brought up and discharged from custody.

The facts upon which the controversy depends are: On August 20, 1925, the relator was arraigned in the City Magistrates' Court, Ninth District, Borough of Manhattan, of the City of New York, upon the charge of vagrancy. (Code Crim. Proc. § 887, subd. 4, cl. a.) It was alleged as the gravamen of the charge in the information that the defendant offered to commit an act of prostitution with one Edward Noeble at the premises 232 West Seventy-fifth street, in the borough of Manhattan, city of New York.

On August 20, 1925, the defendant pleaded not guilty and her trial was adjourned to August 22, 1925, when upon said date she was tried and found guilty by a city magistrate. Her sentence was postponed, however, and she was remanded to the jail until August 24, 1925, for investigation under section 98-a of the Inferior Criminal Courts Act, and the trial magistrate requested in writing that the magistrate thereafter presiding in the district in which relator was convicted impose sentence. The succeeding magistrate who presided in said court on August 24, 1925, thereupon sentenced defendant to the workhouse for 100 days.

The question on this appeal is the right of one city magistrate to try a defendant for vagrancy and to adjourn the case for sentence and request in writing that another succeeding magistrate inflict the penalty.

This question arises under certain sections of the Inferior Criminal Courts Act of the City of New York, which is chapter 659 of the Laws of 1910, since amended in certain particulars not pertinent here. Under section 88 of that act (as amd. by Laws of 1913, chap. 372, and subsequent amdts.), whenever any person, other than a child under the age of sixteen years, is convicted in the city of New York of certain crimes, including vagrancy, other than as provided in sections 88-a and 89 of this act, the magistrate before whom such conviction is had shall, subject to the provisions of section 92 of that act [Section 92 (as amd. by Laws of 1915, chap. 531) provides for the discharge of committed persons], impose upon the person so convicted one or other of certain penalties provided. Section 88-a (as added by Laws of 1913, chap. 372), referred to as an exception to the general direction of section 88, requiring the imposition of a penalty by the magistrate before whom such conviction was had, refers to commitments for public intoxication and the establishment of a board of inebriety, to deal with that offense, and section 89 of the act (as amd. by Laws of 1913, chap. 372,

and subsequent amdt.) refers to the commitment of females convicted of certain offenses, such as soliciting, frequenting disorderly houses or vagrancy under subdivisions 3 or 4 of section 887 of the Code of Criminal Procedure.  Section 89, however, does not except from the rule as to the imposition of penalties by the magistrate before whom the conviction was had since it in its own terms provides that when a female is so convicted of one of the offenses enumerated, the magistrate before whom such conviction is had " shall  *  *  *  impose upon the person so convicted one or other of the penalties herein provided."

Obviously this defendant was convicted under subdivision 4 of section 887 of the Code of Criminal Procedure and her offense is, therefore, within the definition of section 89 of the Inferior Criminal Courts Act.  There is, therefore, an express statutory direction that the magistrate before whom the person is convicted shall impose the penalty provided by law, and the provisions of section 98-a of the act cannot be said to restrict this clause because they do not so purport.  If it were intended to change the system of sentence specifically prescribed for this offense it would seem that this mandatory language of section 89 would have been elided.

Section 98-a (added by Laws of 1913, chap. 372, as amd. by Laws of 1915, chap. 531) provides:

" Remand pending investigation.  After a conviction or a plea of guilty, a magistrate sitting as such or as a Court of Special Sessions may remand the defendant or admit him to bail for a period not to exceed three days for investigation before pronouncing sentence.  In case of the death or disability of any such magistrate, or upon his request endorsed on the papers, sentence may be imposed by any magistrate presiding in the same court."

Under the established principle of construction of statutes, where there is an apparent conflict, that which is general in its terms does not overrule the particular, but applies only where the particular enactment is inapplicable.  In other words, where a general intention is expressed in an act and such act also expresses a particular intention incompatible with the broad direction the particular enactment is considered in the nature of the exception.

In section 175 of Mr. McKinney's work on Statutes and Statutory Construction, a frequently accepted authority, the rule is stated thus: " In other words, a special statute providing for a particular class of cases is not repealed by a subsequent statute general in its terms, provisions and application, unless the intent to repeal it is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law."

In a ruling by the Court of Appeals in *Grimmer* v. *Tenement*

*House Department* (204 N. Y. 370) Chief Judge HISCOCK, writing for the court, states the rule in identic words: " The rule in such case is that a special statute providing for a particular class of cases is not repealed by a subsequent statute general in its terms, provisions and application unless the intent to repeal it is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law. (*City of New York* v. *Trustees Sailors' Snug Harbor*, 85 App. Div. 355; affd., on opinion below, 180 N. Y. 527.) "

The order should be affirmed.

DOWLING, J., concurs.

Order reversed, writ dismissed, and the prisoner remanded. Settle order on notice.