Benjamin Gassman,
Acting Judge. This motion is made by the defendant for a modification of the sentence heretofore imposed upon him on June 16, 1943. It calls for a review of the facts in this case.
On January 30,1942, the defendant was indicted on the charge of robbery in the first degree, committed on January 22, 1942 (Indictment No. 230,700). On the same date, he was also indicted on the charge of criminally carrying concealed a loaded pistol after prior conviction (Indictment No. 230,701). The latter crime was committed at the same time and place as the robbery referred to in the first-mentioned' indictment. On February 16,1942, the defendant was indicted for murder in the first degree, committed on January 21, 1942 (Indictment No. 230,836).
He was brought to trial on the murder charge before the late Judge Jacob Gould Schukman and a jury on October 8, 1942, and was convicted of murder in the first degree. On October 22, 1942, he was sentenced to the death penalty. On April 15, 1943, the Court of Appeals reversed the judgment of conviction and ordered a new trial (290 N. Y. 220).
Thereafter, on May 21, 1943, the defendant pleaded guilty before the late Judge Wallace (1) to murder in the second degree, under Indictment No. 230,836; (2) to robbery in the first degree, under Indictment No. 230,700; and (3) to criminally carrying concealed a loaded pistol, under Indictment No. 230,701. On June 16, 1943, the defendant, as a second felony offender, was sentenced by Judge Wallace to a term of .30 years to life on the murder plea; to a term of 30 years to 60 years on the robbery plea, the second sentence to run consecutively to the murder sentence; and to a term of 7 to *157 14 years on the pistol plea, the last-mentioned sentence to run concurrently with the above two sentences.
The defendant is now confined in Green Haven Prison, where he is serving the first sentence. He has not yet started to serve the second sentence.
On this motion, the defendant asks consideration by the court of a modification of the robbery sentence. His counsel, on the argument of the motion, appealed to this court to modify the said sentence by making it concurrent with the first sentence or by reducing the second sentence, so that the defendant might receive a hearing before the Parole Board.
Even if the court were impelled to do so, it has not the power to direct that the robbery sentence be concurrent with the sentence on the murder plea. The power to exercise any clemency is governed by section 2188 of the Penal Law, which determines the extent to which the court may go, and that power does not extend to the direction that the second sentence run concurrently with the first one. (People ex rel. De Santis v. Warden of N. Y. City Penitentiary, 176 Misc. 844, affd. 262 App. Div. 1003.) It is limited to the suspension of the sentence or suspension of the execution of such sentence (People v. Thuna, 266 App. Div. 223, 225), and may not be exercised, even under that section, “ if the person is convicted of a felony committed while armed with a weapon as provided in section nineteen hundred forty-four ” (Penal Law, § 2188), or after imprisonment under such sentence shall have commenced.
Prior to May 8, 1942, section 1941 of the Penal Law provided that a defendant who was a second or third felony offender “ must be sentenced to imprisonment for an indeterminate term the minimum of which shall be not less than the longest term prescribed upon a first conviction and the maximum of which shall be twice such term”. The maximum sentence on a first conviction for robbery in the first degree was then, as now, 30 years. By chapter 700 of the Laws of 1942, the Legislature amended section 1941 by reducing the minimum sentence for a second or a third felony offender to “ not less than one-half of the longest term prescribed upon a first conviction ”. (Italics supplied.) That amendment became a law on May 8, 1942, and provided that 1 ‘ This act shall * * * apply only to crimes committed on or after the effective date of this act”. The robbery, to which the defendant pleaded guilty was committed on January 22, 1942. Accordingly, the sentence imposed by Judge Wallace was a legal sentence.
There are several questions presented on this motion. (1) Has the court, at this late date, the power to suspend execu *158 tion of the robbery sentence? (2) Assuming that it has, is the exercise of such power prohibited by the provision that no suspension shall be granted to any defendant committing a felony while armed? Assuming that the first question is answered in the affirmative and the second in the negative, has the defendant shown any reason why execution of his sentence should be suspended?
In People ex rel. Woodin v. Ottaway (247 N. Y. 493, 495-496) the court said: “ Jurisdiction to stay the execution did not expire with the term at which the prisoners were tried. Like the power to revoke the suspension, it was not confined to one term nor even to one judge, but was vested in the court (People v. Bork, 96 N. Y. 188, 198; Moett v. People, 85 N. Y. 373, 383; People v. Everhardt, 104 N. Y. 591; People v. Nesce, 201 N. Y. 111; People v. Brown, 153 App. Div. 234; People v. Graves, 31 Hun 382; People ex rel. Gerhrmann v. Osborne, 79 N. J. Eq. 430, 439). The one limitation directed upon the time of its exercise is stated in the statute (Penal Law, § 2188):1 The imprisonment directed by the judgment, shall not be suspended or interrupted after such imprisonment shall have commenced ’ (cf. U. S. v. Murray, 275 U. S. 347; and Cook v. U. S., 275 U. S. 347) ”. (See, also, People v. Thuna, 266 App. Div. 223, 225, supra.)
The robbery sentence not having commenced yet, this court, therefore, has the power to consider defendant’s plea, provided that it has not been established that the defendant was armed when he committed the robbery.
The first count in the indictment, which is the robbery count, charges the defendant with having committed robbery while aided by accomplices actually present and while they were armed with pistols. The indorsement on the indictment shows that on May 21,1943, the defendant pleaded guilty to ‘ ‘ robbery in the first degree ”. The court examined the Clerk’s minutes of May 21, 1943, and they contain a similar entry. There is no mention either on the indictment or in the Clerk’s minutes that the defendant pleaded guilty to armed robbery. The sentencing minutes of June 16, 1943 were read by the court. Considering the fact that Judge Wallace did not spare the defendant when he imposed the sentences upon him, the court must assume that had Judge Wallace considered the defendant as an armed robber, he would not have hesitated to add to the 30- to 60-year sentence the additional penalty provided by section 1944 of the Penal Law. The court will therefore assume that subdivision (c) of the first paragraph of section 2188 does not apply, and that this court, on this motion, has the power to suspend execution of the sentence heretofore imposed on the robbery charge.
*159 This brings us to the third question: Has the defendant shown any valid reason why he should receive any consideration at the hands of the court?
To determine that question, the court ordered a hearing, at which the defendant and other witnesses testified in his behalf. The court is also in receipt of a letter from Rev. Homer E. Cole, the Protestant Chaplain of Green Haven Prison, wherein he states:
£ ‘ I wish to present the following on behalf of William Flynn. During twenty years of incarceration this man has matured remarkably. He is no longer the irresponsible youth that entered prison in the early forties. He has made satisfactory adjustment under the circumstances. His prison record is better than average for so long a sentence. He apparently has a family background of good citizens, who are deeply interested in him and his welfare.
“It would seem that any further incarceration would have little rehabilitative effect on a man who has served so long and has made so good an adjustment, as has William Flynn ’ ’.
The crimes of which the defendant stands convicted are serious and must be so considered by the court. Perhaps if this court were faced with a situation as was Judge Wallace in 1943, its action would not have been any different. However, it must also be considered that almost 20 years have passed since the defendant entered prison. He has lived behind prison walls all those years and had ample time to realize that his way of living before 1943 was wrong. The theory behind the punishment of a criminal does not encompass the execution of society’s vengeance upon him. “ Vengeance is mine, saith the Lord ” (Romans, 12; 19) and neither society nor a Judge should usurp the divine prerogative. Judge Fuld, in People v. Oliver (1 N Y 2d 152, 160) expressed this Biblical statement in judicial language, when he said: “ This application of statutes reducing punishment accords with the best modern theories concerning the functions of punishment in the criminal law. According to these theories, the punishment or treatment of criminal offenders is directed towards one or more of three ends: (1) to discourage and act as a deterrent upon future criminal activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution ’ ’.
“A sentence — the judge’s determination of the punishment to be inflicted on a convicted offender — has two general objectives: deterrence and, especially in modern times, rehabilita *160 tion.” (Guides for Sentencing, Advisory Council of Judges of the National Probation and Parole Association, 1957, page 1.) More important than mere punishment, the rehabilitation of a convicted offender, in the long run, is the most hopeful approach to the protection of society.
Has the defendant, during his long incarceration, had enough time to realize that what he did — the life he led — was wrong? If he has not, then his incarceration was unproductive and his motion should be denied. On the other hand, if the long lapse-of time has brought to him a realization that crime does not pay —when payment is measured by years of life behind bars — then his application should be considered.
Regardless of any action taken by this court, the defendant will still have to abide by the determination of the Parole Board as to whether he achieved maximum rehabilitation, which would entitle him to parole under the murder, sentence. In the final analysis, the Parole Board will determine when the time will be ripe — if it ever is — that the defendant’s incarceration be terminated. As is pointed out in the “ Chaplains’ Appeal for Legislative Consideration on Behalf of Long and Life-term Prisoners ”, signed by Rev. Homer E. Cole and Rabbi Erwin Zimet, Chaplains of Green Haven Prison and by Father George F. McKinney, Chaplain of Sing Sing Prison “ The Parole Board may refuse his plea if its members are convinced that it is undeserved. They may grant it at a later point — or never, if favorable consideration is unwarranted. As a matter of religious conviction, however, we maintain that even a 1 lifer ’ be extended the mercy of hope; the possibility of preparing himself with the help of all rehabilitative means available in our correctional institutions for his personal redemption and a new life
I am accordingly of the opinion that the defendant’s plea merits consideration by the court. The defendant’s motion is accordingly granted to the extent that execution of the sentence of 30 to 60 years on the robbery plea will be suspended.